## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Abdulkadir A., | Case No. 18-cv-2353 (NEB/HB) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Jefferson Beauregard Sessions III, Attorney General; Kirstjen Nielsen, Secretary, Department of Homeland Security; Ronald D. Vitiello, Acting Director, Immigration and Customs Enforcement; Peter Berg, Director, St. Paul Field Office, Immigration and Customs Enforcement; Joel Brott, Sheriff, Sherburne County; and Brian Frank, Sherburne County Jail Administrator, | |
| Respondents. | |

HILDY BOWBEER, United States Magistrate Judge

On August 10, 2018, Petitioner filed a Petition for a Writ of Habeas Corpus under

28 U.S.C. § 2241 challenging his detention by U.S. Immigration and Customs

Enforcement ("ICE") under 8 U.S.C. § 1226(c).  (Pet. [Doc. No. 1].)  Petitioner asserts

that his detention is unlawful on three grounds: (1) he is not subject to mandatory

detention under § 1226(c) because he was not taken into immigration custody

immediately after his release from criminal custody; (2) his detention is unreasonably

prolonged and thus violates due process; and (3) he has a substantial challenge to his

1

removability, and thus his continued detention violates due process.[1]  (Pet. at 1–2.)

Petitioner asks for immediate release under reasonable conditions of supervision or,

alternatively, an individualized bond hearing before an immigration judge ("IJ"); an

award of attorneys' fees and costs pursuant to the Equal Access to Justice Act ("EAJA");

and any other relief the Court may deem appropriate.  (Pet. at 21–22.)  Respondents

Jefferson Beauregard Sessions III, Kirstjen Nielsen, Ronald D. Vitiello, and Peter Berg

("Respondents") filed a response to the petition on September 4, 2018.  (Resp. to Pet.

[Doc. No. 8].)  Petitioner filed a reply on September 24, 2018.[2]  (Reply [Doc. No. 13].)

This matter was transferred to the undersigned on September 25, 2018, for the issuance of

a report and recommendation.  (Order of Recusal [Doc. No. 15].)  As set forth below, the

Court recommends that the petition be denied as to immediate release and granted as to

an individualized bond hearing, and that any request for an award of costs and fees follow

the requirements of the EAJA.

## I.    Background

Petitioner was ordered removed to Somalia in 2002, after conceding his

removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for a conviction for a crime involving

moral turpitude.  (*See* Pet. Ex. M [Doc. No. 1-2]; Ligon Decl. Exs. 1, 8, 10 [Doc. No. 9-

---

[1]  Petitioner concedes in his Reply that his substantial-challenge-to-removability
argument is subsumed in his argument that his detention is unreasonably prolonged.  The
Court agrees and will not discuss this ground for relief separately but will incorporate it
in the discussion of whether Petitioner's detention has been prolonged unreasonably.

[2]  Respondents Joel Brott and Brian Frank did not file a response to the petition but have
agreed to comply with the Court's directives and orders.  (*See* Pinahs Suppl. Decl. Ex. 4
[Doc. No. 14-1].)

1].)  He was released on supervision, however, because the Government of Somalia was not issuing travel documents or accepting deportees at that time.  (*See* Pet. at 2; Resp. at 2; Ligon Decl. Ex. 11.)

While on supervision from 2003–2005, Petitioner was convicted of shoplifting, disorderly conduct, hindering stolen property, receiving stolen property, and several driving-related offenses.  (Ligon Decl. ¶ 15 [Doc. No. 9], Exs. 12, 13.)  He was incarcerated in 2006, and his order of supervision was formally revoked.  (Ligon Decl. ¶¶ 16–17, Exs. 14, 15.)  Petitioner was released on supervision on December 22, 2006. because his removal was not reasonably foreseeable.  (Ligon Decl. ¶ 18, Ex. 16.)

Since 2007, Petitioner has worked to turn his life around.  He has worked with law enforcement and the community to discourage young Somali-Americans from associating with gangs and extremist groups.  (Pet. ¶ 23.)  He also joined Alcoholics Anonymous and was recently elected to a leadership position within that organization.  (Pet. ¶¶ 24–25.) Since 2014, Petitioner has worked at a substance abuse treatment facility and has been commended by the owner for his work.  (Pet. ¶ 26.)

Petitioner was taken into ICE custody on January 30, 2018, for the purpose of effecting his removal to Somalia.  (*See* Pet. Ex. D.)  Somalia had resumed issuing repatriation documents by that time, and had issued a travel document for Petitioner. (*See* Resp. at 2, 7.)  An IJ stayed Petitioner's removal on February 22, 2018; granted his motion to reopen his immigration case on March 22, 2018; and on June 6, 2018, ordered him removed from the United States to any country other than Somalia that would accept him, but granted his application for withholding of removal under 8 U.S.C. § 1231(b)(3).

(Pet. Exs. C, G, I.)  The Department of Homeland Security ("DHS") appealed the IJ's grant of withholding of removal on June 28, 2018.  (Pet. Ex. B.)  Petitioner has not received an individualized bond determination since he was taken into custody.  (*See* Pet. at 3.)

## II.    Discussion

A writ of habeas corpus enables a person detained by the government to challenge the legality of his confinement and, if successful, obtain his release.  *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973).  The right to petition for habeas relief is a foundational legal principal in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage."  *Preiser*, 411 U.S. at 485.  Relevant here, 28 U.S.C. § 2241 confers jurisdiction upon federal courts to hear habeas challenges to the lawfulness of immigration-related detentions, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), but a court's jurisdiction to do so is limited.  8 U.S.C. § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).  This Court may not review a discretionary decision made by immigration authorities, such as the decision to order that a noncitizen be removed to another country.  It may, however, review immigration-related detentions to determine if they comport with the demands of the Constitution.  *Zadvydas*, 533 U.S. at 688.  Accordingly, the Court's task is not to second-guess decisions made within the discretion of an immigration authority, but to assess the constitutional permissibility of the detention itself.  *See Davies v. Tritten*, No. 17-cv-3710 (SRN/SER), 2017 WL 4277145, at *2 (D. Minn. Sept. 25, 2017).

### A.    Mandatory Detention under 8 U.S.C. § 1226(c)

The overarching question before the Court is whether Petitioner is being detained pursuant to 8 U.S.C. § 1226(c), which applies to "criminal aliens" and mandates detention without a bond hearing during removal proceedings, or 8 U.S.C. § 1226(a), which applies to aliens generally during removal proceedings and provides for a bond hearing. Respondents contend that Petitioner is currently being detained under § 1226(c)(1)(B), which requires the Attorney General to take into custody an alien who is deportable because he has been convicted of two or more crimes involving moral turpitude "when the alien is released." Petitioner argues his detention must be pursuant to § 1226(a) because the Attorney General did not take him into immigration custody immediately or even within a reasonable time after his release from criminal custody.

Section 1226(c) reads in its entirety:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who–

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

> when the alien is released, without regard to whether the alien
> is released on parole, supervised release, or probation, and
> without regard to whether the alien may be arrested or
> imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in paragraph
> (1) only if the Attorney General decides pursuant to section 3521 of
> Title 18 that release of the alien from custody is necessary to provide
> protection to a witness, a potential witness, a person cooperating
> with an investigation into major criminal activity, or an immediate
> family member or close associate of a witness, potential witness, or
> person cooperating with such an investigation, and the alien satisfies
> the Attorney General that the alien will not pose a danger to the
> safety of other persons or of property and is likely to appear for any
> scheduled proceeding. A decision relating to such release shall take
> place in accordance with a procedure that considers the severity of
> the offense committed by the alien.

8 U.S.C. § 1226(c).

Petitioner argues that the "when . . . released" clause of § 1226(c)(1) required the

Attorney General to take him into immigration custody immediately upon his release

from criminal custody, but because the government waited years after his release to

detain him, his present detention falls under § 1226(a), thus entitling him to a bond

hearing.  (Pet. ¶¶ 32, 34.)  Respondents argue, on the other hand, that Petitioner is

properly subject to the mandatory detention period of § 1226(c), even though the

government did not take him into immigration custody immediately when he was

released from criminal custody.

There is a split of authority on this issue, which the parties acknowledge.  The

Second, Third, Fourth, and Tenth Circuit Courts of Appeal; a three-judge panel of the

First Circuit Court of Appeals; and one district court in the District of Minnesota are on the side of Respondents. The Ninth Circuit Court of Appeals and a three-judge panel of the First Circuit Court of Appeals are on the side of Petitioner. The Eighth Circuit Court of Appeals has not addressed the issue. The United States Supreme Court has granted certiorari of the Ninth Circuit's decision, *Preap v. Nielsen*, 831 F.3d 1193, 1197 (9th Cir. 2016), *cert. granted sub nom. Nielsen v. Preap*, 138 S. Ct. 1279 (2018), and oral argument was held on October 10, 2018. The relevant authority is summarized below.

### 1.    Respondents' Authority

Four circuit courts of appeals and one court in the District of Minnesota have determined that a deportable criminal alien who was released from criminal custody long before, even years before, he was taken into ICE custody is nonetheless subject to mandatory detention under § 1226(c)). *See Lora v. Shanahan*, 804 F.3d 601, 605-06, 610-13 (2d Cir. 2015), *vacated on other grounds*, 138 S. Ct. 1260 (2018); *Olmos v. Holder*, 780 F.3d 1313, 1327 (10th Cir. 2015); *Sylvain v. Attorney Gen.*, 714 F.3d 150, 161 (3d Cir. 2013); *Hosh v. Lucero*, 680 F.3d 375, 380 (4th Cir. 2012); *Cisneros v. Napolitano*, No. 13-cv-700 (JNE/JJK), 2013 WL 3353939, at *1 (D. Minn. July 3, 2013).

Setting the stage for cases on both sides of the divide is a decision issued by the Board of Immigration Appeals ("BIA"), *In Re Rojas*, 23 I. & N. Dec. 117 (BIA 2001). The issue before the BIA was whether an alien fell within the description of § 1226(c)(1)), even though he was not taken into ICE custody immediately when he was released from criminal custody. *Id.* at 119. Applying *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the BIA first found that the phrase

7

"an alien described in paragraph (1)" in § 1226(c)(2) was susceptible to different interpretations and thus ambiguous. *Id.* at 120. The BIA then examined the entire statutory scheme, including the "when . . . released" clause of § 1226(c)(1), and determined that the "when . . . released" clause was not a descriptor of the alien, but "imposed a duty on the Service to assume the custody of certain criminal aliens and specified the point in time at which that duty arises." *Id.* at 121 ("In other words, we read the phrase 'when the alien is released' . . . as modifying the command that the 'Attorney General shall take into custody' certain criminal aliens by specifying that it be done 'when the alien is released' from criminal incarceration."). As BIA Board Member Anthony C. Moscato aptly pointed out in a concurring and dissenting opinion, "[i]t is difficult to conclude that Congress meant to premise the success of its mandatory detention scheme on the capacity of [ICE] to appear at the jailhouse door to take custody of an alien at the precise moment of release." *Id.* at 128 (Moscato, Bd. Member, concurring in part and dissenting in part). The BIA concluded that the phrase "an alien described in paragraph (1)" included only aliens described in subparagraphs (A) through (D) of § 1226(c)(1), not including the "when released" clause. *Id.* at 125.

The Fourth Circuit was the first circuit court of appeals to address the issue. In *Hosh v. Lucero*, the Fourth Circuit deferred to the BIA's decision in *Rojas* and held that the deportable criminal alien was subject to mandatory detention under § 1226(c) and thus not entitled to a bond hearing. 680 F.3d 375, 377 (4th Cir. 2012). The petitioner in *Hosh* had been taken into immigration custody about three years after his release from criminal custody. *Id.* Applying *Chevron*, the court agreed the meaning of § 1226(c) was

not plain.  The word "when" in § 1226(c) could refer to "action or activity occurring 'at

the time that' or 'as soon as' other action has ceased or begun," or could "mean the

temporally broader 'at or during the time that,' 'while,' or 'at any or every time that.'"

*Id.* at 379–80 (citations and quotations omitted).  *Hosh* also examined the context of the

enactment of § 1226(c) to ensure the BIA's interpretation was permissible:

> Context assures us that the BIA permissibly construed 8 U.S.C. § 1226(c).
> In enacting § 1226(c), Congress had a range of options available to it with
> respect to how aggressively it sought to detain criminal aliens. If we accept
> that "when . . . released" means "at the moment of release," then we must
> conclude that Congress intended to take an aggressive stance against
> criminal aliens, *i.e.*, Congress wanted federal authorities to detain criminal
> aliens immediately upon their release from other custody. We cannot,
> however, take another step and find that, if the criminal alien was not
> immediately detained after release due to an administrative oversight or any
> other reason, then Congress's clear intent was to have that criminal alien no
> longer be subject to the mandatory detention provision of § 1226(c). With
> this in mind, we conclude that it is far from plain, and indeed unlikely, that
> "when . . . released" means "at the moment of release, and not later." While
> that conclusion is possible, we think that it is strained.

*Id.* at 380.  *Hosh* expanded on this context by identifying language from *Demore*, in

which the Supreme Court observed that Congress had enacted § 1226(c) to remedy ICE's

inability to deal with increased criminal activity by aliens and inability to remove

deportable aliens under the detention statutes then in effect.  *Hosh*, 680 F.3d at 381

(quoting *Demore*, 538 U.S. at 518).  Thus, while the Fourth Circuit agreed that the "when

. . . released" clause "connotes some degree of immediacy, we cannot conclude that

Congress clearly intended to exempt a criminal alien from mandatory detention and make

him eligible for release on bond if the alien is not immediately taken into federal

custody."  *Id.* at 381.

Finally, *Hosh* expounded that even if the court were to accept that § 1226(c) required immediate detention upon release, the consequence for failure to comply would not be an exemption from mandatory detention.  *Id.* at 382.  Because the statute "does not specify any consequence for the Government's failure to detain a criminal alien immediately upon release, . . .  even if 'the duty is mandatory, the sanction for breach is not loss of all later powers to act.'"  *Id.* (quoting *United States v. Montalvo–Murillo*, 495 U.S. 711, 713–14 (1990)).  Given Congress's intent that deportable criminal aliens be detained without a bond hearing, "[t]he negligence of officers, agents, or other administrators, or any other natural circumstance or human error that would prevent federal authorities from complying with § 1226(c), cannot be allowed to thwart congressional intent and prejudice the very interests that Congress sought to vindicate."  *Id.*

The Third Circuit, in *Sylvain v. Attorney General*, agreed that dilatory immigration officials do not lose their statutory authority to impose mandatory detention under § 1226(c) if they fail to act immediately when the alien is released from criminal custody. 714 F.3d 150, 152 (3d Cir. 2013).  *Sylvain* also looked to congressional intent and gave *Chevron* deference to the BIA's interpretation of the statute in *Rojas*.  *Id.* at 154–56.  The *Sylvain* court agreed with *Hosh* that ICE's authority to impose mandatory detention did not hinge on the "when . . . released" clause, because the statute did not explicitly nullify that authority if the alien had already left custody or if the government delayed.  *Id.* at 157, 161.

Shortly after *Sylvain* was decided, two judges in the District of Minnesota

grappled with the question in *Cisneros v. Napolitano*, No. 13-cv-700 (JNE/JJK), 2013 WL 3353939, at *1 (D. Minn. July 3, 2013). The Honorable Joan N. Ericksen, United States District Judge, discussed and approved a report and recommendation issued by the Honorable Jeffrey J. Keyes, United States Magistrate Judge. In *Cisneros*, the petitioner had been taken into ICE custody more than eight years after his release from criminal custody. 2013 WL 3353939, at *3. Applying *Chevron* and relying on *Hosh*, Judge Keyes concluded at the first step that "§ 1226 as a whole does not reflect unambiguous congressional intent that the mandatory, pre-removal detention provision only applies to the categories of criminal aliens that are immediately brought into the custody of the immigration authorities." *Id.* at *6. Though the word "when" could mean "'as soon as,' the ordinary meaning of 'when' is elastic enough to embody concepts other than immediacy." *Id.* at *5. In light of Congress' intent to require mandatory detention for certain kinds of aliens deportable for committing specified crimes, Judge Keyes found it more reasonable that the phrase "when . . . released" was reflective of the seriousness of the criminal offenses, and less reasonable that the phrase was meant as a limitation on the time in which ICE could apprehend the aliens. *Id.* at *6.

At the second *Chevron* step, Judge Keyes concluded that "the BIA's interpretation of the statute is a reasonable one to which the Court must defer." *Cisneros*, 2013 WL 3353939, at *6–7. Judge Keyes again found the *Hosh* opinion particularly persuasive, especially its emphasis on the policy echoed throughout § 1226

> that certain criminal aliens have engaged in conduct that takes them outside the ordinary detention framework where they would otherwise be eligible for bond or parole hearings during removal proceedings. Subjecting this

category of aliens to mandatory, pre-removal detention is reasonably
related to the fact that they have engaged in criminal or terroristic acts.
Conditioning mandatory detention on the timing of the Attorney General's
apprehension of such aliens, on the other hand, has a much less obvious
relationship to the public safety and effective deportation policies that
prompted the statute's passage.

*Id.* at \*7 (citing *Hosh*, 680 F.3d at 380–81). Judge Keyes' concluding paragraph is

particularly compelling, especially in light of the similarities between the petitioner in

*Cisneros* and Petitioner here:

Ultimately, Petitioner's argument in this case has the ring of a policy debate
that his side has already lost. On Petitioner's side, one could see the appeal
of having immigration authorities determine, on an individual basis,
whether a person in Petitioner's shoes should be detained. Given
Petitioner's significant family ties within the United States, his years of
work history, and his apparent ability to stay out of trouble for almost a
decade after his release from state custody, an individualized bond or parole
review might provide him the opportunity to convince an immigration
judge that he should be allowed to return to his job, contribute to society,
and care for his daughter while he awaits a final deportation decision. And
automatically detaining him without such a review guarantees that public
funds will be used to keep him locked up until the immigration authorities
decide whether to deport him. Reasonable minds can disagree about the
appeal of Petitioner's side of this policy debate. But the other side has won:
Congress has made the judgment, expressed in § 1226(c), that the safety
risk posed by aliens who, like Petitioner, have committed certain crimes is
too great and the need to have them available for removal too important to
warrant a system other than mandatory, non-reviewable detention. And the
BIA has reasonably interpreted the applicable statute to embody that
judgment without regard to when the immigration authorities are able to
first take federal custody of such an alien. The federal courts have no
authority to open up that debate again and choose a different winner.

*Id.* at \*9.

Although Judge Ericksen did not formally "adopt" Judge Keyes' report and

recommendation, she agreed with it in virtually every respect. Judge Ericksen agreed

that § 1226(c) is ambiguous and, applying *Chevron* deference to the BIA's interpretation,

12

determined "the statute subjects to mandatory detention aliens who have not been detained immediately upon their release from state custody." *Id.* at *1. Judge Ericksen also agreed that the text of § 1226(c) "does not explicitly remove that [mandatory detention] authority if an alien has already left custody." *Id.* (citing *Sylvain*, 714 F.3d at 157; *Hosh*, 680 F.3d at 382).

The Tenth Circuit, in *Olmos v. Holder*, also undertook in a *Chevron* analysis, finding the statute ambiguous and the BIA's interpretation permissible. 780 F.3d 1313, 1317, 1322, (10th Cir. 2015). The court applied several rules of grammar and statutory construction and interpretation before ultimately concluding that § 1226(c) was ambiguous. *Id.* at 1318–22. The court also considered and rejected the applicability of the rule of lenity and the canon of constitutional avoidance, before finding that the petitioner was subject to mandatory detention under § 1226(c). *Id.* at 1322–24. Finally, the court agreed with earlier authority that even if the Attorney General had acted with delay, the statutory requirement of mandatory detention remained intact. *Id.* at 1324.

Finally, in *Lora*, the Second Circuit also deferred to the BIA's interpretation that the clause "when . . . released" did not impose a temporal restriction on the government's authority to detain a criminal alien, but triggered the point in time when the government's duty to detain the criminal alien arose. 804 F.3d at 610–11 (describing the two possible interpretations as the "duty-triggering" construction and the "time-limiting" construction). At the first step, the court found it was ambiguous whether the phrase "when . . . released" should be given the "duty-triggering" construction or the "time-limiting" construction. *Id.* at 611 ("[T]he Supreme Court has long recognized that the

13

word 'when' may alternatively mean 'the precise time when a particular act must be performed,' or 'the occurrence which shall render that particular act necessary.'") (citing *United States v. Willings*, 8 U.S. 48, 55 (1807)).

At the second step, the *Lora* court concluded the BIA's interpretation of "when . . . released" was permissible and should be given *Chevron* deference. *Id.* at 612. In addition, *Lora* found the BIA's interpretation consistent with Supreme Court precedent holding that similar statutes did not establish jurisdictional limits that precluded later action. *Lora*, 804 F.3d at 612 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158 (2003)). Finally, *Lora* remarked that the BIA's interpretation accommodated "practical concerns arising in connection with enforcing the statute," such as the exact timing of release, the agency's resources to appear at the location at the exact time of release, state and local law enforcement's ability to determine citizenship, and the completeness of arrest and conviction records. *Id.* at 612–13.

### 2.    Petitioner's Authority

Petitioner relies on decisions issued by the Ninth Circuit and a three-judge panel of the First Circuit in support of his argument that he is not subject to mandatory detention under § 1226(c) because he was not transferred "directly from criminal custody into immigration custody." (*See* Reply at 5–6.)

In *Castaneda v. Souza*, 810 F.3d 15 (1st Cir. 2015) (*en banc*), the First Circuit split evenly on the question at hand, and thus the decision is not binding on lower courts. *See Taylor v. Tenant Tracker, Inc.*, 710 F.3d 824, 827 n.2 (8th Cir. 2013) ("[A]n affirmance by an equally divided court is not binding precedent."). Three judges on the *Castaneda*

panel found that both the structure and the legislative history of § 1226(c) were clear that "Congress plainly intended for the 'when . . . released' clause in (c)(1) to apply to (c)(2) as well. *Castaneda*, 810 F.3d at 23–24 (Barron, J.) ("Barron panel"). Proceeding to the question of timing, the Barron panel concluded that Congress used "when" to convey immediacy, *id.* at 38, and to establish "a time constraint on §1226(c) that expires after a reasonable time," *id.* at 43.

The other three judges on the panel examined the grammar and syntax of § 1226(c) and agreed with the BIA that the "when . . . released" clause was an adverbial phrase that qualified the verb "take" in the phrase "The Attorney General shall take into custody," and was not intended to describe "any alien." *Id.* at 47 (Kayatta, J.) ("Kayatta panel"). And, even if that was incorrect, the Kayatta panel found, delay would not invalidate the mandatory detention provision. *Id.* at 58.

In *Preap*, the Ninth Circuit held that "Congress's use of the word 'when' [in § 1226(c)] conveys immediacy," such that "immigration detention must occur promptly upon the aliens' release from criminal custody." 831 F.3d 1193, 1197 (9th Cir. 2016), *cert. granted sub nom. Nielsen v. Preap*, 138 S. Ct. 1279 (2018). The court found that § 1226(c) was not ambiguous and that "an alien described in paragraph (1)" was exactly that—"an alien who had committed a covered offense *and* who was taken into immigration custody 'when . . . released.'" *Preap*, 831 F.3d at 1201. The Ninth Circuit acknowledged that it did not need to proceed to the second *Chevron* step, but did so anyway. *Id.* at 1201–03 & n.14. Nevertheless, the Ninth Circuit believed that the BIA's interpretation would be impermissible, because, as the Ninth Circuit understood *Rojas*,

15

the BIA would find that an alien detained pursuant to § 1226(a) could be released under § 1226(c)(2). *Id.* at 1201 (dicta). The Ninth Circuit also rejected *Sylvain*'s loss-of-authority doctrine on the basis that, because ICE could still detain an alien under § 1226(a), there was no loss of authority. *Id.* at 1206.

### 3.    This Court Agrees with the Majority Rule and Reasoning

The Court agrees with the BIA's determination in *Rojas* that the phrase "an alien described in paragraph (1)" in § 1226(c)(2) is subject to different interpretations: Does the description of the alien include the "when . . . released" clause, or is the description of the alien limited to subsections (A) through (D)? The Court further agrees that the BIA's interpretation of the clause "when . . . released" to describe the government's duty to take the alien into custody—not to describe the criminal alien—was a permissible interpretation of the statute, in light of the statutory scheme, congressional intent, and rules of syntax and grammar.

Furthermore, as *Hosh*, *Cisneros*, *Olmos*, and *Lora* elucidate, the word "when" in the phrase "when the alien is released" could mean "immediately," "upon the condition of some other action," "during," "while," or "at any time after." Even the *Preap* court and the Barron panel vacillated between "immediately," "promptly," and "reasonably" soon after. As Judge Keyes remarked in *Cisneros*, it would be more reasonable to consider the phrase "when . . . released" as intended to reflect the seriousness of the criminal offenses than as a limitation on the time to detain such aliens. And *Lora* construed the clause "when . . . released" to trigger the government's duty to detain, not to limit the time in which the government must act. All of these constructions are

16

reasonable and, even if they do not definitely answer the question at hand, demonstrate the range of plausible interpretations of the "when . . . released" clause.

Finally, even if § 1226(c) required immediate detention on release from criminal custody, or reasonably soon thereafter, the Court also agrees with the majority of circuit courts and *Cisneros* that the consequence for failing to comply is not an exemption of mandatory detention for the alien. The statute does not explicitly nullify the Attorney General's authority, nor would that be consistent with Congress's intent to detain aliens who are deportable for committing certain kinds of crimes. If the detention of criminal aliens was of such importance that Congress intended detention at the moment of release, or as soon thereafter as possible, then it would make little sense to preclude detention because the Government delayed.

Consequently, the Court concludes that Petitioner is subject to mandatory detention under § 1226(c) and therefore not entitled to a bond hearing under § 1226(a).

## B.    Whether Petitioner's Detention Is Unreasonably Prolonged

Having concluded that Petitioner is detained pursuant to § 1226(c), the Court now turns to his argument that his detention is unreasonably prolonged. Petitioner has been detained since January 30, 2018, more than nine months.

The Supreme Court has not held that detentions under § 1226(c) lasting longer than six months require the government to justify their continuance. In *Demore*, the Supreme Court reversed a decision by the Ninth Circuit Court of Appeals holding that § 1226(c) was unconstitutional on its face because it authorized detention but provided no mechanism to challenge the basis for detention. The Supreme Court affirmed the legality

17

of the petitioner's six-month detention under § 1226(c), finding that his detention was reasonably related to removal and was for a short period of time. 538 U.S. at 526–31. The Court noted that the Due Process Clause does not require the government to employ the least burdensome means when removing deportable aliens and that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 528, 531. In addition, the Court emphasized that detentions pending removal proceedings under § 1226(c) do not raise the same constitutional concerns as § 1231 post-final-removal-order detentions because the former typically last for a much shorter period of time. *Id.* at 530 (noting detentions under § 1226(c) last "roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal"). Thus, the majority held, the petitioner's six-month detention to secure his attendance at removal proceedings did not offend the Constitution, but the majority declined to comment on whether a longer detention under § 1226(c) would raise constitutional concerns. However, Justice Kennedy noted in his concurrence that "were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33 (Kennedy, J., concurring).

Interpreting *Zadvydas* and *Demore*, several federal courts of appeals—citing the canon of constitutional avoidance—construed § 1226(c) to include a reasonableness limitation on the length of time that an alien could be detained. *See, e.g.*, *Reid v. Donelan*, 819 F.3d 486 (1st Cir. 2016), *withdrawn*, *Reid v. Donelan*, No. 14-1270,

2018 WL 4000993 (1st Cir. May 11, 2018); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199 (11th Cir. 2016), *vacated*, *Sopo v. U.S. Att'y Gen.*, 890 F.3d 952 (11th Cir. 2018); *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *overruled by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), *cert. granted*, *vacated*, *Shanahan v. Lora*, 138 S. Ct. 1260 (2018).

Earlier this year, in *Jennings*, the Supreme Court revisited the constitutionality of detentions under § 1226(c) and rejected the analysis utilized by the various circuits in the above decisions. 138 S. Ct. at 836. The case involved a class of non-citizens detained by immigration authorities under § 1226(c) and other detention statutes for periods lasting longer than six months. *Id.* at 838. The class sought and obtained from the district court an injunction requiring immigration authorities to hold individualized bond hearings for each class member to assess whether the government was justified in continuing their detention. *Id.* Applying the constitutional avoidance doctrine and relying on the reasoning of *Zadvydas*, the Ninth Circuit interpreted § 1226(c) to contain an implicit six-month time limit on the length of mandatory detention and upheld the requirement that detainees be provided individualized bond hearings after six months of detention. *Id.* at 842, 846.

The Supreme Court reversed, finding that the Ninth Circuit misapplied the constitutional avoidance doctrine. *Id.* at 842. The Court noted that § 1226(c) was clear on its face that persons detained under the statute could only be released for witness-protection purposes. *Id.* at 846. Therefore, the constitutional avoidance doctrine could not be used to reinterpret the statute to impose a six-month time limit on mandatory

19

detentions.  *Id.* at 842 (explaining the "canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.").  Without commenting on the constitutionality of the detentions at issue in the lawsuit, the Court remanded the case for further consideration.  In doing so, the Court determined that a six-month *per se* rule of reasonableness was not supported by the text of § 1226(c), but stopped short of assessing whether and to what extent a prolonged detention under § 1226(c) would exceed constitutional bounds.  *Id.* at 847.  Thus, the constitutionality of prolonged detentions under § 1226(c) remains an open question.

Various circuit courts of appeals have wrestled with that question.  Prior to *Jennings*, the Second and Ninth Circuits held that under § 1226(c), detentions longer than six months were *per se* unreasonable.  *See Rodriguez*, 715 F.3d at 1138; *Lora*, 804 F.3d at 614–16.  As noted above, however, the *Jennings* court rejected that approach.  *See* 138 S. Ct. at 843–44.

The Third and Sixth Circuits have embraced a more flexible approach to assessing the constitutionality of prolonged detentions under § 1226(c).  Noting that some extended detentions under § 1226(c) could raise a "serious risk" of violating the due process rights of detainees, the Third Circuit held that § 1226(c) only "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes."  *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231 (3d Cir. 2011).  Similarly, the Sixth Circuit held that § 1226(c) authorizes the government to "detain *prima facie* removable aliens for a

time reasonably required to complete removal proceedings in a timely manner," but that habeas relief may be warranted if the "process takes an unreasonably long time." *Ly v. Hansen*, 351 F.3d 263, 268 (6th Cir. 2003). Both courts declined to adopt a bright-line time limitation, finding that the reasonableness of a detention is a product of the particular facts of a case and the extent to which a detention justifiably serves the goals of the statute. *Id.* at 271; *Diop*, 656 F.3d at 233. Though decided before *Jennings*, the fact-specific approach utilized in these cases appears consistent with the Supreme Court's analysis in *Jennings*.

Although the Eighth Circuit has not commented on the constitutionality of prolonged detentions under § 1226(c), courts in the District of Minnesota have assessed the reasonableness of prolonged pre-removal detentions on multiple occasions. Those courts have granted habeas relief where a noncitizen detainee remained in custody for a prolonged period of time while the government was unable to demonstrate an actual plan or timetable for future removal. *Phan v. Brott*, No. 17-cv-432 (DWF/HB), 2017 WL 4465285, at *4 (D. Minn. Sept. 14, 2017), *R. & R. adopted*, 2017 WL 4460752 (D. Minn. Oct. 5, 2017) ("Respondents do not address how much longer they expect the pre-removal proceedings to last before the Board of Immigration Appeals . . . [and] have not shown that there is a reasonable likelihood Petitioner will be repatriated in the future."); *Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (Petitioner "has also provided evidence, which the government has failed to rebut, that his removal is not significantly likely in the reasonably foreseeable future . . . [and therefore] must be released from custody"); *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 926 (D. Minn. 2006) ("The Court

21

finds that, in the absence of any plan or timetable for removal, and given his already seven months of detention by ICE beyond that deemed reasonable by the *Demore* Court . . . the Court finds that his release is warranted.").  Though decided prior to *Jennings*, these cases embraced the common thread recognized by each of the courts of appeals that have considered the constitutional scope of detentions under § 1226: for a detention under that statute to be permissible, it must justifiably advance the goal of facilitating removals.  If removal is unlikely, or even in reasonable doubt, the detention may offend the Constitution.

After *Jennings*, several courts in this District have addressed due process challenges to prolonged detention under § 1226(c) through careful examination of the facts of the particular case to determine whether the detention was reasonable.  *See, e.g.*, *Muse v. Sessions,* No. 18-cv-0054 (PJS/LIB), 2018 WL 4466052, at *4 (D. Minn. Sept. 18, 2018); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205, at *5 (D. Minn. Mar. 26, 2018), *R. & R. adopted*, 2018 WL 2390132 (D. Minn. May 25, 2018); *Ahmed v. Sessions*, No. 18-cv-0438 (JRT/HB), R. & R. at 12–17 (D. Minn. May 2, 2018), *dismissed per stipulation*.  In each of those cases, based on the specific facts and circumstances of the case, the court determined the pre-removal detention was unreasonable.  *Muse,* 2018 WL 4466052, at *4–6; *Mohamed*, 2018 WL 2392205, at *5–6; *Ahmed*, No. 18-cv-0438 (JRT/HB), R. & R. at 16.

Here, Petitioner challenges his detention as violating due process because it has been prolonged unreasonably.  The Due Process Clause of the Fifth Amendment requires that "no person shall . . . be deprived of liberty, liberty or property . . . without due

process of law."  U.S. Const. amend. V.  Because the Fifth Amendment forbids the government from depriving any "person" of liberty, liberty or property without due process, citizens and noncitizens alike are protected by its provisions.  *Mathews v. Diaz*, 426 U.S. 67, 78 (1976).  "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects," *Zadvydas*, 533 U.S. at 690, and "it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993).  "At the same time, however, this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."  *Demore*, 538 U.S. at 523.

In a recent decision from this District analyzing continued detention under § 1226(c), the Honorable Patrick J. Schiltz "follow[ed] the lead of virtually every court that has addressed the issue following *Jennings*—including two judges of this District— and [held] that a due-process challenge to § 1226(c) detention must be resolved by closely examining the facts of the particular case to determine whether the detention is reasonable."  *Muse*, 2018 WL 4466052, at *3 (citations omitted).  Courts utilizing this fact-specific inquiry have identified several factors that are particularly useful in identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community."  *Id.* (quoting *Diop*, 656 F.3d at 232).  These factors are:

(1) the total length of detention to date, (2) the likely duration of future

23

detention, (3) the conditions of detention, (4) delays of the removal
proceedings caused by the detainee, (5) delays of the removal proceedings
caused by the government, and (6) the likelihood that the removal
proceedings will result in a final order of removal.

*Id.* (citing *Reid*, 819 F.3d at 500–01).[3]

Application of the relevant factors to the facts and circumstances in this case

supports a conclusion that Petitioner's continued detention—without an individualized

bond hearing at which an IJ could consider whether he is a danger to the community or

likely to flee—would violate due process.  First, with respect to the length of detention,

Petitioner has been detained for nine months, which exceeds the "brief" period assumed

in *Demore*.  "[C]ontinued detention without inquiry into its necessity becomes more and

more suspect" as detention continues past the time frame described in *Demore*.  *Diop*,

656 F.3d at 234.  As noted in *Muse*, detentions similar in length to Petitioner's have been

found unreasonable.  *Muse*, 2018 WL 4466052, at *4 (*citing Sajous v. Decker*, No. 18-

2447, 2018 WL 2357266, at *1, 7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v.*

*Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v.*

*Shanahan*, No. 15-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight

months)).  The length of Petitioner's detention weighs in favor of granting relief.

Second, courts consider how long the detention is likely to continue in the absence

---

[3] In a footnote, Judge Schiltz acknowledged that the First Circuit withdrew its decision in
*Reid* following the Supreme Court's opinion in *Jennings*.  *Muse*, 2018 WL 4466052, at
*3 n.3.  Judge Schiltz found, however, that the *Reid* factors established "a reasonable
framework for balancing the due process interests at stake" even though they were
"originally adopted in the context of reading an implicit reasonableness limitation into
§ 1226(c). . . ," and even though the *Reid* decision was withdrawn.  *Id.* (quotation and
internal quotation marks omitted).

of judicial relief.  *See Muse*, 2018 WL 4466052, at *5.  In postulating when detention will

end, courts take into account the anticipated duration of all removal proceedings,

including administrative and judicial appeals.  *See id.* (citing *Ly*, 351 F.3d at 272) ("The

entire process, not merely the original deportation hearing, is subject to the constitutional

requirement of reasonability.").  Although it is not possible to predict when the BIA will

rule, it is quite likely that the losing party will appeal to the Eighth Circuit Court of

Appeals, and Petitioner's detention could be extended by another year or more.  *See id.*

Moreover, while Petitioner has conceded removability, there is not yet a final order of

removal.  The second factor also favors Petitioner.

  Third, courts examine the conditions of the alien's detention.  *See id.*  Aliens

detained under § 1226(c) are subject to civil detention, not criminal incarceration.  *Id.*

(citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)).

"The more that the conditions under which the alien is being held resemble penal

confinement, the stronger his argument that he is entitled to a bond hearing."  *Id.*

Petitioner is being detained at the Sherburne County Jail.  While the record is not

developed on this issue, this Court assumes that Petitioner is detained with inmates who

are serving criminal sentences.  Respondents have not shown otherwise.  Thus, this factor

weighs in Petitioner's favor.

  Fourth, courts consider the nature and extent of any delays in the removal

proceedings caused by the alien.  *See Muse*, 2018 WL 4466052, at *5.  There is no

evidence, nor have Respondents argued, that Petitioner has delayed the proceedings in

any way.  Consequently, this factor favors Petitioner.

Fifth, courts consider the nature and extent of the government's role in causing delay in the removal proceedings. *See id.* at *6. Here, though the DHS appealed the IJ's grant of withholding of removal, it was within its rights to do so, and it has not engaged in any dilatory tactics. This factor therefore weighs in favor of Respondents.

Finally, courts consider whether the proceedings will end in a final removal order. *Id.* Higher likelihood of the alien's removal means a longer period of detention may be reasonable. *Id.* Petitioner argues that he has raised a substantial challenge to his removability, as demonstrated by the IJ's grant of his application to withhold removal, the government's failure to adequately justify his mandatory detention, and his low flight risk. But the Court finds this factor does not favor one party over the other. While the most recent decision to be issued in Petitioner's immigration proceedings granted his application to withhold removal, an appeal of that decision is pending before the BIA. This Court is not inclined to speculate about the merits of the arguments before the BIA or the BIA's ruling. As to Petitioner's other two substantial-challenge arguments, the Court has concluded that the Government has justified his mandatory detention, and the Court does not possess a sufficient record on which to conclude that Petitioner is not a risk of flight. Thus, this factor is neutral and does not favor either party.

In sum, four factors weigh in Petitioner's favor, one weighs in Respondents' favor, and one favors neither party. Based on this analysis, the Court finds that the continued detention of Petitioner without an individualized bond hearing would violate his right to due process under the Fifth Amendment. A bond hearing at which the parties may present evidence and argument concerning whether Petitioner is a danger to the

community or likely to flee "will protect both [Petitioner's] rights under the Due Process

Clause and the government's legitimate interest in detaining a removable alien when such

detention is necessary to serve the purposes of § 1226(c)."  *See Muse*, 2018 WL 4466052

at *6.[4]

### C.    Attorneys' Fees and Costs

Under the Equal Access to Justice Act ("EAJA"),

> a court shall award to a prevailing party other than the United States fees
> and other expenses, in addition to any costs awarded pursuant to subsection
> (a), incurred by that party in any civil action (other than cases sounding in
> tort), including proceedings for judicial review of agency action, brought by
> or against the United States in any court having jurisdiction of that action,
> unless the court finds that the position of the United States was
> substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  The party requesting fees and expenses must submit

an application to the Court within thirty days of final judgment.  28 U.S.C.

§ 2412(d)(1)(B).  Accordingly, Petitioner's request for an award of costs and fees

is neither ripe nor properly submitted, and the Court makes no recommendation on

this aspect of the petition at this time.

---

[4]  Because the Court will recommend that Petitioner be granted a bond hearing on the
basis that his detention is unreasonably prolonged, the Court does not reach his argument
that ICE's authority to detain him under § 1226(c) lapsed when the IJ granted his motion
to reopen, consistent with *Hamama v. Adducci*, 285 F. Supp. 3d 997, 1007 (E.D. Mich.
2018).  Petitioner would not be granted any additional relief under *Hamama*.  Moreover,
Petitioner raised this argument for the first time in his Reply, and generally the Court
does not consider arguments made for the first time in a reply brief, *see Barham v.
Reliance Standard Life Ins. Co.*, 441 F.3d 581, 584 (8th Cir. 2006), especially where a
party is represented and the relevant authority was decided months before the petition
was filed.

## III.     Conclusion

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. If the District Court adopts this Report and Recommendation, an immigration judge must provide Petitioner with a bond hearing within thirty days of the District Court's order.  At the bond hearing, the immigration judge must make an individualized determination regarding whether detention is necessary to protect the community or to prevent Petitioner from fleeing; and

2. Petitioner's request for immediate release should be denied.

Dated:  November 13, 2018                    _s/ Hildy Bowbeer_____
                                             HILDY BOWBEER
                                             United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.  Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation.  A party may respond to the objections within fourteen days after being served with a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).